IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| DARYL COBRANCHI, ERIC ENGLE, and FREEDOM FROM RELIGION FOUNDATION, INC., <br><br> *Plaintiffs,* <br><br> vs. <br><br><br><br> THE CITY OF PARKERSBURG, <br><br> *Defendant.* | CIVIL ACTION NO.: 2:18-cv-01198 <br><br> PLAINTIFFS' VERIFIED COMPLAINT FOR DECLATORY JUDGMENT, INJUNCTIVE RELIEF, AND NOMINAL DAMAGES |

INTRODUCTION

1. The City of Parkersburg has adopted and instituted an official Christian prayer that opens every City Council meeting. City Council members recite what is commonly referred to as the "Lord's Prayer" at each meeting and City Council members encourage city residents to join them in reciting the prayer. This is prohibited under the Establishment Clause of the First Amendment. "The principle at stake here may be a profound one, but it is also simple. The Establishment Clause does not permit a seat of government to wrap itself in a single faith." *Lund v. Rowan Cty., N.C.*, 863 F.3d 268, 290 (4th Cir. 2017).

1

## JURISDICTION AND VENUE

2. This action arises under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

3. This Court has jurisdiction under Article III of the United States Constitution, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3)–(4).

4. The Court is authorized to award declaratory relief under 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the facts arose in the district and the defendant is located within the district.

## PARTIES

6. Plaintiff Daryl Cobranchi is a resident of Parkersburg, West Virginia.

7. Mr. Cobranchi has frequently attended Parkersburg City Council meetings. He attended nearly every Council meeting from January 2017 through October 2017. He also attended Council meetings periodically from 2011 to 2016.

8. Mr. Cobranchi has spoken before the City Council on several topics, including advocating for the Council to adopt a non-discrimination ordinance.

9. During Council meetings that Mr. Cobranchi attended, the Council President has directed attendees to stand for the Lord's Prayer. The Council President then led meeting attendees in the Lord's Prayer.

10. During Council meetings that Mr. Cobranchi attended, he was conspicuous by not standing and not reciting the Lord's Prayer.

11. Mr. Cobranchi felt pressure to participate in the prayer because the City Council members and many attendees stood and recited the Lord's Prayer in unison.

12. Mr. Cobranchi identifies as an atheist. He feels negatively singled out by the Council's recitations of the Lord's Prayer because he does not share the religious beliefs of the Council and the majority of attendees who join the Council in prayer.

13. Mr. Cobranchi stopped regularly attending Council meetings in late 2017 because he feels the Council treats him like a second-class citizen. He believes the Council's policy of reciting the Lord's Prayer is disenfranchising him and all religious minorities in Parkersburg. Mr. Cobranchi believes the Council's prayer practice announces that Parkersburg is a Christian city and that all others are not welcome before the City Council.

14. Mr. Cobranchi has publicly expressed that the Council's Lord's Prayer recitation makes him feel excluded from the political process in his community. On August 23, 2017, *The Parkersburg News and Sentinel* quoted Mr. Cobranchi as saying, "For far too long, this council has acted as if the only people whose opinions matter are conservative Christians." On October 1, 2017, *The Parkersburg News and Sentinel* published Mr. Cobranchi's letter to the editor, which stated in part that the Council's prayer recitation "assigns to second-class status anyone who is not Christian."

15. Mr. Cobranchi wants to continue participating in his local government, but the Council's insistence on reciting the Lord's Prayer has made him feel unwelcome at Council meetings. He continues to follow issues that come before the Council and obtains the Council meeting agendas the Thursday before each meeting. If the Council stopped reciting sectarian prayers at its meetings, Mr. Cobranchi would begin attending meetings again.

16. Mr. Cobranchi has received criticism for his opposition to the City Council's prayer practice, including by City Councilman Eric Barber. In October 2017, Mr. Cobranchi

resigned from his position as the elected chairman of the Wood County Democratic Executive Committee because of personal attacks related to his opposition to the City Council's prayers.

17. Plaintiff Eric Engle is a resident of Parkersburg, West Virginia.

18. Mr. Engle attends Parkersburg City Council meetings.

19. Mr. Engle attended nearly every Council meeting from March 2017 through August 2017, during which time the Council considered a non-discrimination ordinance. Before that, Mr. Engle attended City Council meetings that involved the subject of violations of the city's charter.

20. Mr. Engle continues to follow City Council agenda topics closely, including recent discussions of city park remodeling and the implementation of Mayor Tom Joyce's Equal Employment Opportunity policy. Mr. Engle wants to remain engaged with matters that come before the City Council so that he can have a voice in City Council decisions that affect his local community.

21. During Council meetings that Mr. Engle attended, he was conspicuous by not standing and not reciting the Lord's Prayer.

22. Mr. Engle felt pressure to participate in the prayer because the City Council members and many attendees stood and recited the Lord's Prayer in unison.

23. Mr. Engle identifies as an agnostic atheist. He feels negatively singled out by the Council's recitations of the Lord's Prayer because he does not share the religious beliefs of the Council and the majority of attendees who join the Council in prayer.

24. The Council's recitations of the Lord's Prayer have made Council meetings very uncomfortable for Mr. Engle. He feels excluded and has observed that others who do not participate in standing during the prayer or reciting the Lord's Prayer appear to be excluded.

4

25. Mr. Engle plans to attend future Council meetings.

26. Plaintiff Freedom From Religion Foundation ("FFRF") is a nonprofit corporation that advocates for the separation of state and church and educates on matters of non-theism. FFRF has over 32,000 members nationwide, including more than 100 members in West Virginia. FFRF brings this action to assert the First Amendment rights of its members who are residents of the City of Parkersburg. Mr. Cobranchi and Mr. Engle are members of FFRF.

27. Defendant, the City of Parkersburg, is a municipal body and corporate entity existing under the laws of the state of West Virginia.

28. Defendant has instituted repeated sectarian and coercive prayers led by members of the Parkersburg City Council at its City Council meetings.

29. Defendant was acting by and through its employees and elected officials, all of whom were acting within the course and scope of their official position, for and on behalf of the Defendant.

## FACTS

### City Council

30. The City of Parkersburg has vested all legislative and policymaking powers of the City with the Parkersburg City Council. The City Council consists of nine members from nine election districts.

31. The City Council meets in the Council chamber at City Hall twice each month. City Council meetings are open to the public.

32. The City Council publishes on its agendas that City Council meetings begin at 7:30 p.m.

33. The City Council has established an official policy and custom of opening every meeting with a Christian prayer.

34. When it is time for the meeting to begin at or after 7:30 p.m. and a quorum is present, the City Council President stands and signals to City Council members and others in attendance to join in standing. City officials, including the Mayor, City Clerk, and City Attorney join in standing. The Council President, City Council members, and other attendees then collectively recite the Lord's Prayer.

35. By policy and practice, the City Council has adopted a version of the Lord's Prayer as the official prayer to open meetings.

36. City Council members collectively recite the following version of the Lord's Prayer or a version that is substantially similar to the following:

> Our Father who art in heaven,
> Hallowed be thy name.
> Thy kingdom come.
> Thy will be done,
> On earth as it is in heaven.
> Give us this day our daily bread.
> And forgive us our trespasses,
> As we forgive those who trespass against us.
> And lead us not into temptation,
> But deliver us from evil.
> For thine is the kingdom,
> the power, and the glory,
> for ever. Amen

37. The recited version of the Lord's Prayer by the City Council incorporates a biblical translation of Matthew 6:9–13 as well as a concluding Christian doxology.

38. Following the prayer, the City Council recites the Pledge of Allegiance and begins with the business of the City Council.

39. The City Council has included in its published Council meeting minutes the fact that its members routinely join in "the Lord's Prayer" at the beginning of meetings for over a decade.

40. The City Council's published meeting minutes recorded 41 instances over the last three years where City Council members "joined in the Lord's Prayer," including on the following dates: June 26, 2018; May 22, 2018; May 1, 2018; April 10, 2018; Mar. 7, 2018; Feb. 27, 2018; Jan. 9, 2018; Dec. 19, 2017; Dec. 12, 2017; Nov. 28, 2017; Nov. 14, 2017; Oct. 10, 2017; Sept. 26, 2017; Aug. 22, 2017; June 27, 2017; June 13, 2017; May 23, 2017; May 9, 2017; Feb. 28, 2017; Feb. 14, 2017; Jan. 24, 2017; Dec. 20, 2016; Dec. 13, 2016; Nov. 15, 2016; Oct. 11, 2016; Sept. 27, 2016; Sept. 13, 2016; Aug. 23, 2016; Aug. 9, 2016; July 26, 2016; July 12, 2016; June 28, 2016; June 14, 2016; May 24, 2016; May 3, 2016; April 12, 2016; Mar. 8, 2016; Feb. 23, 2016; Feb. 9, 2016; Jan. 26, 2016; Jan. 12, 2016.

41. The City Council's published meeting agendas for the year 2016 included prayer. The words "Prayer and Pledge of Allegiance" were included at the top of the agendas for the following meeting dates: Dec. 20, 2016; Nov. 29, 2016; Nov. 15, 2016; Oct. 25, 2016; Oct. 11, 2016; Sept. 27, 2016; Sept. 13, 2016; Aug. 23, 2016; Aug. 9, 2016; July 26, 2016; July 12, 2016; June 28, 2016; June 14, 2016; May 24, 2016; May 3, 2016; April 19, 2016; April 12, 2016; Mar. 22, 2016; Mar. 8, 2016; Feb. 23, 2016; Feb. 9, 2016; Jan. 26, 2016; Jan. 12, 2016.

42. The City of Parkersburg recorded audio of its past meetings, including the prayers that officially begin its meetings. The recordings of the Lord's Prayer at past meetings are available on the City's website.

43. The City of Parkersburg publishes video recordings of recent council meetings on its YouTube channel. These videos show the City Council President John Reed initiating a

recitation of the Lord's Prayer before meetings on July 10, 2018; June 26, 2018; June 12, 2018; May 22, 2018; May 1, 2018; April 17, 2018; April 10, 2018; Mar. 27, 2018, Mar. 13, 2018; Feb. 27, 2018; Feb. 13, 2018; and Jan. 9, 2018. Videos of these incidents are available here: https://www.youtube.com/channel/UCnB1o9IZ7LWLn6rcupcRlDw/videos (accessed July 17, 2018).

44. The City Council members treat the Lord's Prayer as an official part of the meeting, even when it is not referenced on official meeting agendas.

45. For example, on April 10, 2018, City Council president John Reed banged his gavel and called the Council meeting to order without first saying the Lord's Prayer. Upon realizing he had forgotten to lead the prayer, he adjourned the meeting, said "we forgot about the prayer," and said everyone could be seated. He then said, "Now rise," and motioned for people to stand again as he began reciting the Lord's Prayer. After reciting the Lord's Prayer and the Pledge of Allegiance, he banged his gavel and called the meeting to order again. A video of the incident is available here: https://www.youtube.com/watch?v=N4mIAjrmZSA (accessed July 17, 2018).

**Coercive Prayers**

46. City Council members face the public while they recite the Lord's Prayer.

47. The City Council President often motions for City Council members and meeting attendees to stand and participate in the prayer.

48. For example, on June 26, 2018, the City Council President John Reed initiated the Lord's Prayer by announcing "All right" as he stood, then looked out at the audience as he motioned with both arms to stand for the prayer. After this direction, many meeting attendees

8

stood and joined the Council in reciting the Lord's Prayer. A video of the incident is available here: https://www.youtube.com/watch?v=UfWOu84eGdE&t (accessed July 17, 2018).

49. Many public attendees of City Council meetings join in reciting the Lord's Prayer at each meeting.

50. Persons who are not standing or reciting the Lord's Prayer therefore are conspicuous by not participating.

51. Persons who have refused to stand or recite the Lord's Prayer at City Council meetings have been confronted by city officials.

52. For example, on September 12, 2017, City Councilman Eric Barber stared at attendees who sat during the Lord's Prayer. At the conclusion of the prayer, Councilman Barber moved to position himself near his microphone, pressed a button on his microphone, and shouted "Amen." A video of the incident is available here:

https://www.youtube.com/watch?v=fj56LyrgLQ0 (accessed July 17, 2018).

**FFRF Requests Compliance with the Constitution**

53. Upon receiving a complaint from Mr. Cobranchi, FFRF sent a letter dated July 1, 2015, to then-Council President J.R. Carpenter regarding the City Council's practice of reciting the Lord's Prayer. The letter from FFRF attorney Patrick Elliott stated that the Council's practice of reciting the Lord's Prayer was coercive and violated the Establishment Clause. The letter is attached as Exhibit 1.

54. In response to the letter from FFRF, City Attorney Joseph T. Santer sent a response letter dated July 22, 2015. The letter is attached as Exhibit 2. The letter said that City Attorney Santer had advised the Council to proceed as follows:

    1.   "Any prayer should be conducted (and as it already is) prior to calling the meeting to order;

    2.   The public should not be invited to stand or otherwise participate in the prayer; and

    3.   No elected official should lead the prayer."

55.    After receiving FFRF's letter of complaint, City Attorney Joseph T. Santer and the City Council failed to remedy the unconstitutional prayers or to enact the proposed policy changes identified in City Attorney Santer's response letter.

56.    Even if enacted by the City Council, the proposed actions in City Attorney Santer's letter do not comply with the Establishment Clause of the First Amendment.

57.    Prayers by the City Council that take place prior to "calling the meeting to order" are still treated by the City Council and meeting attendees as part of the meeting.

58.    FFRF sent a letter to City Attorney Joseph T. Santer dated July 31, 2015, informing him that it was legally insignificant that the City Council recites the prayer prior to "calling the meeting to order." In the same letter, FFRF informed Mr. Santer that prayers before government meetings are "government speech" and have been treated that way by every court that has addressed the issue. FFRF directed Mr. Santer's attention to several cases decided by the U.S. Court of Appeals for the Fourth Circuit. *See Turner v. City Council of Fredericksburg*, 534 F.3d 352, 353 (4th Cir. 2008) ("the prayers at issue here are government speech"), cert. denied, 129 S.Ct. 909 (2009); *Simpson v. Chesterfield County Bd. of Supervisors,* 404 F.3d 276, 288 (4th Cir. 2005) ("the speech . . . was government speech."); *Joyner v. Forsyth Cty.*, 1:07CV243, 2009 WL 3787754, at *5 (M.D.N.C. Nov. 9, 2009) (". . . Defendant's invocation prayers are government speech.") *aff'd,* 653 F.3d 341 (4th Cir. 2011). This letter is attached as Exhibit 3.

59. Despite the letter of July 22, 2015 from City Attorney Santer, the City Council's practice of reciting the Lord's Prayer has remained largely unchanged.

60. Since July 2015, the City Council has continued to schedule the Lord's Prayer at the beginning of the City Council's meetings. City Council members have continued to lead the Lord's Prayer at the beginning of City Council meetings. City Council members have continued to invite citizens in attendance to recite the Lord's Prayer at the beginning of City Council meetings. In addition, at least one City Council member has made a point of observing and reacting to attendees who choose not to participate in the prayers.

## COUNT ONE

**42 U.S.C. § 1983 – Deprivation of Plaintiffs' Constitutional Rights by Defendant**

61. The foregoing averments of this Complaint are incorporated by reference.

62. By endorsing and advancing religion through the recitation of Christian prayers by city council members, Defendant has deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

63. The City Council has a religious purpose, rather than a secular purpose, in reciting the Lord's Prayer at City Council meetings.

64. The City Council's recitation of the Lord's Prayer has the primary effect of both advancing religion and expressing Defendant's preference for Christianity above all other religions and nonreligion.

65. Through its policy and custom of opening each meeting with the Lord's Prayer, the City Council has entangled the city with a religious practice and an official religious message.

66.     The adoption and recitation of the Lord's Prayer constitutes an endorsement of one religion, specifically Christianity, by the City of Parkersburg, to the exclusion of other religions and non-religion.

67.     The City Council members have coerced participation in religion by leading meeting attendees in the Lord's Prayer and intimidating nonparticipants.

WHEREFORE, Plaintiffs respectfully request the following relief from this Honorable Court:

A.  A declaratory judgment declaring that Defendant's custom, policy, and practice, as alleged above, violates the United States Constitution;

B.  An injunction preliminarily, and thereafter permanently, enjoining Defendant, including Defendant's officers and its agents, from initiating or delivering sectarian prayers at meetings of the Parkersburg City Council.

C.  Entry of judgment for Plaintiffs against Defendant for nominal damages in the amount of $1 to each Plaintiff.

D.  Costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

E.  Such other relief as this Honorable Court deems just and proper.

Respectfully Submitted,

*/s/ Marcus B. Schneider*
Marcus B. Schneider
W.V. I.D. No. 12814
STEELE SCHNEIDER
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
412-235-7682
marcschneider@steeleschneider.com

Kristina Thomas Whiteaker
W.V. I.D. No. 9434
The Grubb Law Group
1114 Kanawha Boulevard East
Charleston, WV 25301
304-345-3356
kwhiteaker@grubblawgroup.com

Patrick C. Elliott*
Christopher Line*
Freedom From Religion Foundation, Inc.
10 N. Henry St.
Madison, WI 53703
608-256-8900
patrick@ffrf.org
chris@ffrf.org
* Visiting Attorney Application Pending

## VERIFICATION OF COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746

I, DARYL COBRANCHI, verify, under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 30, 2018

_Daryl Cobranchi_
Daryl Cobranchi

## VERIFICATION OF COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746

I, ERIC ENGLE, verify, under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 27, 2018

_____
Eric Engle