IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**DARYL COBRANCHI, ERIC ENGLE,
and THE FREEDOM FROM RELIGION
FOUNDATION, INC.,**

      **Plaintiff,**

v.                                                     Civil Action No. 2:18-cv-01198

**THE CITY OF PARKERSBURG,**

      **Defendant.**

**MEMORANDUM IN SUPPORT OF THE CITY OF PARKERSBURG'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, The City of Parkersburg, submits the following Memorandum in Support of its Motion for Summary Judgment. As set forth below, there is no dispute of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiffs' claim pursuant to Fed. R. Civ. P. 56. As such, the Defendant is entitled to summary judgment in this matter.

### I.    INTRODUCTION

Plaintiffs assert that the Parkersburg City Council's practice of reciting the Lord's Prayer before the beginning of the City Council meetings violates the Establishment Clause. Plaintiffs claim, generally, that the prayer is Christian, that the public has previously been invited to participate, and though the Plaintiffs have never participated in the prayer, they felt "conspicuous," "pressured" or "excluded" by not participating. Dkt. 1, Plaintiffs' Complaint, p.4, ¶¶ 20-24.

Plaintiffs, however, have failed to show how the City's practice has denigrated nonbelievers or religious minorities, threatened damnation, or preached conversion, coerced or

proselytized, or ever treated or suggested the City Council would treat an attendee differently due to a failure to participate. *See Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014). Instead, these respectful and brief prayer practices are constitutional, and fit within the long and unbroken tradition of legislative prayer this country has allowed since the first session of Congress.

The Supreme Court wrote in *Greece* that the purpose of legislative prayer,

> is largely to accommodate the spiritual needs of lawmakers and connect them to a tradition dating to the time of the Framers. For members of town boards and commissions, who often serve part-time and as volunteers, ceremonial prayer may also reflect the values they hold as private citizens. The prayer is an opportunity for them to show who and what they are without denying the right to dissent by those who disagree.

*See Town of Greece v. Galloway*, 134 S. Ct. at 1826.

The Plaintiffs herein want to end this tradition dating to the time of the Framers, and request what would be a bold violation of the Establishment Clause—to enjoin the Defendant "from initiating or delivering sectarian prayers at the meetings of the Parkersburg City Council." Dkt. 1, Plaintiffs' Complaint, p.21, Wherefore Clause. Forcing the City of Parkersburg to end the tradition of legislative prayer in the United States would show "a hostility toward religion that has no place in our Establishment Clause traditions." *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2074, 204 L. Ed. 2d 452 (2019) (citing *Van Orden v. Perry*, 545 U.S. 677, 704, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) (BREYER, J., concurring in judgment)).

Plaintiffs' Complaint is misplaced, however, and Defendant is entitled to summary judgment.

## II. STATEMENT OF FACTS

The operative facts of this case are almost entirely undisputed. The City of Parkersburg is a municipality located in Wood County, West Virginia. The Parkersburg City Council

consists of nine elected members who typically meet twice a month at the City Hall. Dkt. 23, Joint Stipulation of Facts, p.1, ¶¶ 1-2. Since at least 1982, the City Council prayed some form of prayer during City Council meetings. *See* Affidavit of John Reed at ¶¶ 6-9, attached to Motion as **Exhibit A**. From 2008 to 2015, the City Council recited the Lord's Prayer at the beginning of its meetings, and since July 2015, the Lord's Prayer has been recited specifically prior to the beginning of the meetings in response to a request from the Plaintiff. Dkt. 23, Joint Stipulation of Facts, p.3, ¶ 17, p.4, ¶ 28. Following the Lord's Prayer, the City Council recites the Pledge of Allegiance and then the meeting is called to order. Dkt. 23, Joint Stipulation of Facts, p.3, ¶ 21. The Lord's Prayer as recited by the Parkersburg City Council follows the typical format:

> Our Father who art in heaven, hallowed be thy name.
> Thy kingdom come. Thy will be done, on earth as it is in heaven.
> Give us this day our daily bread; and forgive us our trespasses,
> as we forgive those who trespass against us;
> and lead us not into temptation, but deliver us from evil.
> For thine is the kingdom, the power, and the glory forever. Amen.

The prayer takes place "prior to the Call to Order." Dkt. 23, Joint Stipulation of Facts, p.6, ¶ 30. Aside from one occasion on April 10, 2018 when the Lord's Prayer and Pledge of Allegiance were recited during a recess due to an oversight, it is undisputed that since at least 2015, all forms of prayer take place prior to the meeting being called to order to perform any governmental functions. *Id.* at ¶¶ 35 and 38. The purpose of the prayer is for the benefit of the City Council members as a spiritual invocation to assist them in their decision making and to put them in the proper mindset to perform their civic duties. *See* Affidavit of John Reed at ¶ 10, 13.

On July 1, 2015, the Freedom From Religion Foundation, Inc. send a letter to then-Council President J.R. Carpenter complaining about the City Council's prayer practice. Dkt. 23, Joint Stipulation of Facts, p.4, ¶ 26. The City Attorney responded and outlined nearly the exact

criteria for Legislative Prayer set forth by Justice Kennedy in the 2014 Supreme Court decision in *Greece v. Galloway*. Dkt. 23, Joint Stipulation of Facts, p.4, ¶ 27. While the City Council did not follow all of the suggestions laid out by the City Attorney, they did hold the prayer prior to "calling the meeting to order," and other than the stray events referenced by the Plaintiffs, the President ceased inviting the public to participate. Dkt. 23, Joint Stipulation of Facts, p.4, ¶ 28-p.5 ¶ 29. The Freedom From Religion Foundation, Inc., took the position that such efforts and proposed changes were insufficient, and cited pre-*Greece* cases to support this contention. Dkt. 1, Plaintiffs' Complaint, p. 10-11, ¶ 56, 58, Ex. 3. On July 21, 2018, the Plaintiffs filed the underlying suit in an effort to end the City of Parkersburg's participation in the long tradition of legislative prayer, alleging that the practice violates the Establishment Clause of the United States Constitution. *See generally*, Plaintiffs' Complaint, Count I.

### III.     STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element." *Ohio Valley Environmental Coalition v. Foal Coal Company*, LLC, 274 F. Supp. 378, 384 (S.D. W.Va. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.E.2d 265 (1986)). The moving party has the burden of establishing that there is no genuine issue as to any material fact. *Wallace v. Community Radiology*, 2016 LEXIS 51342 (S.D. W. Va. 2016) (citing Celotex, 477 U.S. 317, 322–23 (1986)). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. *Id*. If the moving party meets this burden, "there can be 'no genuine

issue at to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

## IV. LAW AND ARGUMENT

A. **THE SUPREME COURT HAS RECOGNIZED THAT LEGISLATIVE PRAYER HAS A HISTORICAL BACKGROUND OLDER THAN THE FOUNDING OF THIS COUNTRY AND RECOGNIZED BY THE FRAMERS OF THE UNITED STATES CONSTITUTION.**

Legislative prayer, while religious in nature, has long been understood as compatible with the Establishment Clause. *Marsh v. Chambers*, 463 U.S. 783, 792, 103 S.Ct. 3330, 77 L.Ed.2d 1019. The United States Supreme Court has instructed that claims such as the claim presented in this case must be evaluated against this backdrop of historical practice. Specifically, in 1983 the Supreme Court affirmed the constitutionality of legislature prayer offered by a chaplain before its legislative session – even when the chaplain is paid with public funds for his service. *Marsh v. Chambers*, 463 U.S. 783 (1983).

In *Marsh* the Nebraska Legislature had been opening up its sessions with a prayer by a Presbyterian minister who was paid through public funds. *Marsh*. 463 U.S. 783, 784-85. Chief Justice Burger began the majority opinion with a historical overview of legislative prayer in the United States, beginning his analysis with colonial times. *Id*. at 786-87. In early colonial times chaplains frequently opened legislative sessions with prayer, this tradition continued at the First Congress where one of the first initial items of business was to find a chaplain for precisely this purpose. Just three days after a chaplain was found, the language for the Bill of Rights was agreed upon. *Id*. at 787. The *Marsh* Court considered the practice of legislative prayer within this historical background, and the fact that those who continued it were the same men who constructed our Bill of Rights. Chief Justice Burger wrote, "[i]t is obviously correct that no one

acquires a vested or protected right in violation of the Constitution by long use, even when that span of time covers our entire national existence and indeed predates it. Yet an unbroken practice ... is not something to be lightly cast aside." *Id*. at 790, *citing Walz v. Tax Comm'n*, 397 U.S. 664, 678 (1970).

Not only was the legislative prayer upheld in *Marsh*, but the Court allowed the prayer to continue in a Christian form paid for with public funds. *Id*. at 791-92. Senator Chambers claimed – as do Plaintiffs herein – that in a pluralistic society an overtly Christian prayer should not be allowed. In an attempt to bolster this claim, Senator Chambers argued that not all legislators accepted the practice of opening the First Congress with prayer. *Id*. at 791. Chief Justice Burger dismissed this argument and in doing so he appropriately cited to Samuel Adams' remark on the very matter of the First Congress' prayer, where he said, "he was no bigot, and could hear a prayer from a gentleman of piety and virtue, who was at the same time a friend to his country." *Id*. at 792.

**B.     THE SUPREME COURT IN *GREECE V. GALLOWAY* HAS CLARIFIED LEGISLATIVE PRAYER AT A LOCAL MEETING IS PROPER**

The principals established in *Marsh* were—and remain—the controlling authority for challenges to legislative prayer as recognized by the Supreme Court again in *The Town of Greece v. Galloway.* Following *Marsh*, the *Greece* Court considered legislative prayer not offered by chaplains in a solely legislative body, but to a local city board meeting where citizens were part of the meeting and determined that such prayers were constitutional even when sectarian.

The facts of *Greece* are as follows: in 1999, a newly elected town supervisor decided to open sessions by inviting local clergy to give a prayer. *Town of Greece v. Galloway*, 134 S. Ct.

1811, 1816 (2014). From 1999-2007, the clergymen were all Christians from the local area who served as unpaid volunteers. *Id*. The Town of Greece did not attempt to control the prayers, which often had Christian themes. Some examples of prayers show this recurring Christian theme:

> Lord we ask you to send your spirit of servanthood upon all of us gathered here this evening to do your work for the benefit of all in our community. We ask you to bless our elected and appointed officials so they may deliberate with wisdom and act with courage. Bless the members of our community who come here to speak before the board so they may state their cause with honesty and humility.... Lord we ask you to bless us all, that everything we do here tonight will move you to welcome us one day into your kingdom as good and faithful servants. We ask this in the name of our brother Jesus. Amen.

Some prayers very specifically related to Christian Holy Days:

> Lord, God of all creation, we give you thanks and praise for your presence and action in the world. We look with anticipation to the celebration of Holy Week and Easter. It is in the solemn events of next week that we find the very heart and center of our Christian faith. We acknowledge the saving sacrifice of Jesus Christ on the cross. We draw strength, vitality, and confidence from his resurrection at Easter.... We pray for peace in the world, an end to terrorism, violence, conflict, and war. We pray for stability, democracy, and good government in those countries in which our armed forces are now serving, especially in Iraq and Afghanistan.... Praise and glory be yours, O Lord, now and forever more. Amen.

*Town of Greece*, 134 S. Ct. 1811, 1816-1817. The Plaintiffs claimed that these Christian prayers were offensive, the town had been excluding other religions, and that it violated the Establishment Clause. *Id*.

Justice Kennedy wrote the majority decision, and – similar to Chief Justice Burger's analysis in the *Marsh* case – focused on the historical practice of legislative prayer in framing the issue under the Establishment Clause. *Id*. at 1819.

The Court first considered that the prayers were typically sectarian in nature and ruled that legislative prayer need not be generic and that the State should not overly involve itself in the content of the prayers. *Id*. at 1822-23. The Court instead determined that "[i]f the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion, many present may consider the prayer to fall short of the desire to elevate the purpose of the occasion and to unite lawmakers in their common effort." *Id*. at 1823. In *Greece* there were even two circumstances which could be categorized as disparaging non-Christians, but the Court considered these stray remarks and not representative of the pattern and practice of the prayers. *Id*. at 1824. No such allegation is present in the case at bar.

The Court next determined that the prayers at issue were not coercive in nature. It determined that this analysis is considered from the point-of-view of a reasonable observer and that "[i]t is presumed that the reasonable observer is acquainted with this tradition and understands that its purposes are to lend gravity to public proceedings and to acknowledge the place religion holds in the lives of many private citizens, not to afford government an opportunity to proselytize or force truant constituents into the pews." *Id*. at 1825. The Court stated that these prayers were primarily for the benefit of the legislatures prior to performing their work, and that there was no evidence that any citizen was treated differently due to their participation. *Id*. at 1825-26. The Court reasoned that the Plaintiffs may have been offended, but that "[o]ffense, however, does not equate to coercion." *Id*. at 1826.

The *Greece* Court also rejected the argument that the "constituents might feel pressure to join the prayers to avoid irritating the officials who would be ruling on their petitions," and instead wrote that "[n]othing in the record indicates that town leaders allocated benefits and

burdens based on participation in the prayer, or that citizens were received differently depending on whether they joined the invocation or quietly declined." *Id*. at 1826.

The Supreme Court rejected the notions that prayers to open a city board may not be sectarian and are coercive. But, the Court in *Greece* did not hold that no constraints remain on legislative prayer. The Court noted that:

> If the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion, many present may consider the prayer to fall short of the desire to elevate the purpose of the occasion and to unite lawmakers in their common effort. That circumstance would present a different case than the one presently before the Court.

*Id*. at 1823. Although the *Greece* Court notes that the analysis would be different if the legislators "directed the public to participate in the prayers, singled out dissidents for opprobrium, or indicated that their decisions might be influenced by a person's acquiescence in the prayer opportunity", none of the foregoing were deemed to be dispositive. *Id*. at 1826.

## C. THE CITY OF PARKERSBURG'S PRAYER PRACTICES FOLLOW THE SUPREME COURT'S GUIDANCE

*Greece* provides the analytical framework for evaluating whether a legislative prayer practice violates the Establishment Clause. The two primary holdings in *Greece* were that: (1) legislative prayer is not required to be nonsectarian, and as long as it does not proselytize or advance any one, or disparage any other, faith or belief, courts should not restrict it; and (2) that a reasonable observer would know that sectarian prayers which fit within the Country's long

tradition of legislative prayers are not coercive. The City of Parkersburg's practice of prayer fits within the requirements of *Greece* and should not be ended.[1]

### 1. Sectarian Prayers at Legislative Functions are Explicitly Permitted by the Supreme Court

Plaintiffs' Complaint spends considerable time focusing on the sectarian nature of the Lord's Prayer. But, the *Greece* Court made clear in its Syllabus that "[Plaintiff's] insistence on nonsectarian prayer is not consistent with this [legislative prayer] tradition," and "[a]bsent a pattern of prayers that over time denigrate, proselytize, or betray an impermissible government purpose, a challenge based solely on the content of a particular prayer will not likely establish a constitutional violation." *Town of Greece*, 134 S. Ct. 1811, 1813-1814.

The Lord's Prayer was first spoken by Jesus Christ as recorded in the Gospel of Matthew. Though the Lord's Prayer is a sectarian prayer within the meaning of *Greece,* nothing about the Lord's Prayer runs afoul of *Marsh* or *Greece*. Legislative prayer is not required to be generic or non-sectarian—and mandating that prayer be sectarian is a constitutional violation in and of itself. Nothing in the Lord's Prayer denigrates, proselytizes, or betrays an impermissible government purpose. In fact, were it not such a famous prayer, it would appear to be nonsectarian – the language of The Lord's Prayer does not mention Christ, preach conversion, and only asks for the help of a non-specific God – the most that someone could glean from the prayer alone is that the reciter is a monotheist, possibly of the Abrahamic tradition. Moreover, the Lord's Prayer serves the purpose recognized for Legislative Prayer: its place at the opening of meeting, "where it is meant to lend gravity to the occasion and reflect values long part of the

---

[1] Defendant is aware of the Fourth Circuit decision of *Lund v. Rowan City, N.C.*, 863 F.3d 268 (2017), and this case was cited at length in the filings surrounding the *Plaintiffs' Motion for Preliminary Injunction*. The Defendant anticipates that the Plaintiffs will again cite *Lund* at length in their motion for summary judgment, and the Defendant will address their arguments surrounding this case in response.

Nation's heritage … [p]rayer that is solemn and respectful in tone, that invites lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing." *Greece*, 572 U.S. 565, 582–83, 134 S. Ct. 1811, 1823, 188 L. Ed. 2d 835.

### 2. The City Council's Prayers are not Coercive

Taking the facts in the light most favorable to the Plaintiffs, the City Council has taken no action which could be considered an "invitation" to join a prayer since June 26, 2018, when the City Council President motioned his arms up at the audience. The Plaintiffs' argument that the City Council "invites" participation should be consider moot in light of sparse evidence on this issue.

Based on their Motion for Preliminary Injunction, the Plaintiffs seek to conflate the sectarian nature of the prayers with coercion, and that because the Lord's Prayer is a Christian prayer, it must be coercive. *Greece* emphasized that it was not concerned with the sectarian nature of the prayers, but rather with whether they sought to denigrate or proselytize; the Lord's Prayers simply cannot be deemed coercive under controlling precedent. *Town of Greece*, 134 S. Ct. 1811, 1821-22.

Mr. Cobranchi and Mr. Engel allege they were "conspicuous" because they chose to remain seated while others stood, "felt pressure to participate," and "feel negatively singled out," by not participating in the Lord's Prayer. Dkt. 1, Plaintiffs' Complaint, p. 2-4, ¶¶ 10-12; 21-23. The sole objective allegation arises from a September 12, 2017 meeting during which Councilman Eric Barber looked at the Plaintiffs' video camera as they filmed the Lord's Prayer and stated "Amen" into his microphone. Dkt. 1, Plaintiffs' Complaint, p. 9, ¶¶ 51-52. These stray occurrences add nothing to Plaintiffs' case for coercion under *Greece*.

The coercive "feelings" the Plaintiffs point toward are exactly the type of allegations the Supreme Court in *Greece* considered insufficient to reach the level of coercion. In Section II-B of *Greece*, Justice Kennedy was joined by Chief Justice Roberts and Justice Alito in stating, "[i]n their declarations in the trial court, respondents stated that the prayers gave them offense and made them feel excluded and disrespected …[o]ffense, however, does not equate to coercion." *Greece*, 134 S.Ct. 1826.[2] The Supreme Court also confirmed that this analysis is not a subjective analysis, but takes place from the point of view of a reasonable observer, and "[i]t is presumed that the reasonable observer is acquainted with this tradition and understands that its purposes are to lend gravity to public proceedings and to acknowledge the place religion holds in the lives of many private citizens, not to afford government an opportunity to proselytize or force truant constituents into the pews." *Id.* at 1825.

The *Greece* Court expressly held that offense does not equal coercion, and "[i]f circumstances arise in which the pattern and practice of ceremonial, legislative prayer is alleged to be a means to coerce or intimidate others, the objection can be addressed in the regular course." *Greece*, at 1826. While the Plaintiffs allege in detail their internal feelings about the Council's practice, they have not alleged any facts that could plausibly demonstrate that the prayer is a "means to coerce or intimidate others."

To the extent that the 18-month-old "invitation" is still relevant, *Greece* requires the Court to consider the prayer opportunity as a whole, not a single prayer; thus, stray events should not control the day. *Greece* at 1824.

### 3. Other Factors from *Greece* and *Marsh*

---

[2] Justices Thomas and Scalia would have held that coercion was only at issue when there was "force of law and threat of penalty" for the nonadherent. *Greece* at 1837 (Thomas, J. concurring).

In addition to the two overarching factors from *Greece*, there are other considerations laid out by the Supreme Court which are relevant to the constitutional considerations at hand, and which should also be considered here.

### i. The prayers took place prior to the legislative function of the City Council meetings in accordance with *Greece*

The *Greece* Court considered it **favorable** to the city that prayers took place before official business, writing "the prayer is delivered during the ceremonial portion of the town's meeting. Board members are not engaged in policymaking at this time, but in more general functions," and, "[t]he inclusion of a brief, ceremonial prayer as part of a larger exercise in civic recognition suggests that its purpose and effect are to acknowledge religious leaders and the institutions they represent rather than to exclude or coerce nonbelievers." *Id*. at 1827. Despite one stray occurrence at the April 10, 2018 Council meeting where the Council forgot the prayer and thus adjourned the meeting to briefly hold it, this single event should not be dispositive of this Court's analysis; indeed, the effort to remove the recitation of the Lord's Prayer from the official business of the meeting is evidence of separation between the ceremonial aspect of the meeting and the substantive legislative functions. *Greece* makes clear that the City of Parkersburg's timing of the prayer meets the exact criteria the Supreme Court envisioned as appropriate.

### ii. The Plaintiffs Request this Court Take a Position Hostile to Religion and the Over Two-Hundred Year Tradition of Legislative Prayer

Legislative prayer is interwoven into this Country's history as deeply as any other practice. The Supreme Court in *Greece* and *Marsh* recognized this reality: "[t]hat the First Congress provided for the appointment of chaplains only days after approving language for the First Amendment demonstrates that the Framers considered legislative prayer a benign

acknowledgment of religion's role in society." *Greece* at 1819. "In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with a prayer has become part of the fabric of our society." *Marsh* at 792, 103 S. Ct. 3330.

A ruling halting this practice would harm the City of Parkersburg – both its citizens, and the Councilmembers. The members of the Parkersburg City Council take their duties seriously. There can be no doubt that many people of faith turn to a higher power when they must face serious issues and responsibilities. The Court in *Greece* detailed the value of these prayers:

> The principal audience for these invocations is not, indeed, the public but lawmakers themselves, who may find that a moment of prayer or quiet reflection sets the mind to a higher purpose and thereby eases the task of governing. The District Court in Marsh described the prayer exercise as "an internal act" directed at the Nebraska Legislature's "own members," *Chambers v. Marsh*, 504 F. Supp. 585, 588 (Neb. 1980), rather than an effort to promote religious observance among the public. See also *Lee*, 505 U.S., at 630, n. 8, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (Souter, J., concurring) (describing Marsh as a case "in which government officials invoke[d] spiritual inspiration entirely for their own benefit"); *Atheists of Fla., Inc. v. Lakeland*, 713 F. 3d 577, 583 (CA11 2013) (quoting a city resolution providing for prayer "for the benefit and blessing of" elected leaders); Madison's Detached Memoranda 558 (characterizing prayer in Congress as "religious worship for national representatives"); Brief for U.S. Senator Marco Rubio et al. as Amici Curiae 30-33; Brief for 12 Members of Congress as Amici Curiae 6. To be sure, many members of the public find these prayers meaningful and wish to join them. But their purpose is largely to accommodate the spiritual needs of lawmakers and connect them to a tradition dating to the time of the Framers. For members of town boards and commissions, who often serve part-time and as volunteers, ceremonial prayer may also reflect the values they hold as private citizens. The prayer is an opportunity for them to show who and what they are without denying the right to dissent by those who disagree.

*Town of Greece*, 134 S. Ct. 1811, 1825-1826. These prayers are for the City Council, and to deprive them of their ability to put themselves in the proper mindset before performing their legislative duties would be a disservice to the public whom they serve and run afoul of the Constitution.

### iii. The Plaintiffs Would Not Be Satisfied with Any Form of Legislative Prayer

It is well worth noting that the Plaintiffs have already expressed that legislative prayer, even that in the exact form found in *Greece*, would be unacceptable to them. In the July 2015 letter exchanges between the Freedom From Religion Foundation, Inc. and the City of Parkersburg Attorney, the City Attorney suggested that: "(1) Any prayer should be conducted (and as it already is) prior to calling the meeting to order; (2) The public should not be invited to stand or otherwise participate in the prayer; and (3) No elected official should lead the prayer." Dkt. 1, Plaintiffs' Complaint, p. 10, ¶ 54, Ex. 2. As outlined, these criteria precisely mirrored the circumstances found in *Greece*, yet the Plaintiffs maintain that "Even if enacted by the City Council, the proposed actions of the City Attorney Santer's letter do not comply with the Establishment Clause of the First Amendment." Dkt. 1, Plaintiffs' Complaint, p. 10, ¶ 56. In short, the Plaintiffs would only be satisfied if this Court were to be hostile to religion, which is forbidden under the Constitution.

Plaintiffs make no effort to square their allegations with any of the centuries of First Amendment jurisprudence. They do not come to this Court with a case or controversy but rather with an agenda to divorce prayer – *any* prayer – from the function of government. Were this Court to award the relief requested in Plaintiffs' Complaint, it would squarely violate *Greece*. Such a *carte blanche* prohibition against sectarian prayer violates established First Amendment

jurisprudence and would chill the practice of Legislative prayer both within and without this Court's jurisdiction.

## **CONCLUSION**

For all the reasons stated above, this Court should grant this *The City of Parkersburg's Motion for Summary Judgment* because the prayer as performed before the City Council meetings is permissible under the Constitution.

**CITY OF PARKERSBURG,**

**By Counsel,**

/s/ Jordan V. Palmer, Esq.
Timothy L. Mayo (W.Va. Bar No. 5771)
Jeffrey A. Foster (W.Va. Bar No. 9410)
Jordan V. Palmer (W.Va. Bar No. 12899)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
tmayo@flahertylegal.com
jfoster@flahertylegal.com
jpalmer@flahertylegal.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Defendant The City of Parkersburg, do hereby certify that on **April 27, 2020**, I electronically filed the foregoing *Memorandum in Support of the City of Parkersburg's Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| Marcus B. Schneider | Kristina Thomas Whiteaker | Patrick C. Elliot |
|---|---|---|
| STEELE SCHNEIDER | The Grubb Law Group | Christopher Line |
| 428 Forbes Avenue, Suite 700 | 1114 Kanawha Blvd. East | Freedom From Religion |
| Pittsburg, PA 12519 | Charleston, WV 25301 | Foundation, Inc. |
| | | 10 N. Henry Street |
| | | Madison, WI 53703 |

/s/ Jordan V. Palmer, Esq.
Timothy L. Mayo (W.Va. Bar No. 5771)
Jeffrey A. Foster (W.Va. Bar No. 9410)
Jordan V. Palmer (W.Va. Bar No. 12899)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
tmayo@flahertylegal.com
jfoster@flahertylegal.com
jpalmer@flahertylegal.com