UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON


DARYL COBRANCHI, ERIC ENGLE, and
FREEDOM FROM RELIGION
FOUNDATION, INC.


      Plaintiffs,


v.                                    Civil Action No. 2:18-cv-01198


CITY OF PARKERSBURG,


      Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending is the Motion For Attorneys' Fees of plaintiffs Daryl Cobranchi ("Cobranchi"), Eric Engle ("Engle"), and Freedom from Religion Foundation, Inc. ("FFRF").  ECF No. 42.  The defendant City of Parkersburg filed a Response To "Plaintiff's Motion For Attorney Fees."  ECF No. 44.  Plaintiffs filed a reply brief.  Pls.' Reply Br. To Def.'s Resp. To Pls.'

Mot. For Att'ys' Fees, ECF No. 45.  The court grants in part and denies in part the plaintiffs' motion.

### I.  Factual and Procedural Background

This case arises from a long-standing practice of the City of Parkersburg City Council ("City Council") to recite a Christian prayer before every city council meeting.  Mem. Op. and Order 1-2, ECF. 40.  Beginning in the early 1980s, the City Council opened its meetings by inviting a member of the public to start the meeting with a prayer.  Id. at 2.  In 2008, the City Council adopted a new practice, and the members themselves began leading the recitation of a Christian prayer, commonly known as the Lord's Prayer, after its meetings had been called to order.  Id.  From 2008 until July 2015, the City Council, led by the City Council President, would stand and face members of the public who were in attendance, and, with their heads bowed, recite the Lord's Prayer in unison.  Id.  Some members of the public stood and joined in the prayer, while others remained seated.  Id. at 4.

This practice continued until July 2015 when the City Council president received a letter from the FFRF, dated July 1, 2015, which argued that the practice violated the Establishment Clause of the First Amendment of the United States Constitution.  Responding to the FFRF by letter on July 22,

2

2015, the City Attorney for Parkersburg informed the FFRF that the City Council had been advised to make changes to its practice, namely, that prayer should be conducted prior to calling a meeting to order; that the public should not be invited to stand or otherwise participate in the prayer; and that no elected official should lead the prayer.  Id.

Thereafter, the City Council persisted in its prayer practice, albeit in a slightly modified form.  Rather than beginning its meetings with a prayer, the City Council recited the Lord's Prayer immediately before calling its meetings to order.  Id. at 2.  As before, the City Council stood and prayed in unison while facing members of the public.  Id. at 3-4.  On at least three occasions since July 2015, the then-City Council President "gestured or raised [his] hands at the beginning of the prayer," inviting the public to join the City Council in prayer.  Id. at 4, 24.  As it had since 2008, the City Council would then recite the Pledge of Allegiance before calling the meeting to order.  Id.  As of April 4, 2022, "the City of Parkersburg's prayer practice remain[ed] the same."  Id.

Plaintiffs Cobranchi and Engle are residents of Parkersburg who have attended City Council meetings in the past.  Mem. Op. 5-6.  Mr. Cobranchi has previously spoken before the City Council on issues that concerned him.  Id. at 5.  Neither

3

Cobranchi nor Engle believes in the Christian teachings embodied in the Lord's Prayer.  Id. at 5-6.  In accordance with their beliefs, the plaintiffs did not stand or otherwise take part when the Lord's Prayer was recited at City Council meetings they attended.  Id.  Both plaintiffs felt negatively singled out by the City Council's practice and stopped attending City Council meetings as a result.  Id.

The FFRF is a nonprofit corporation that "advocates for the separation of state and church and educates on matters of nontheism."  Id. at 6-7.  Cobranchi lodged a complaint with the FFRF about the City's practice, prompting the FFRF to send its letter of July 1, 2015.  Id. at 7.

On July 31, 2018, the plaintiffs filed this action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the City of Parkersburg's prayer practice. Verified Coml. ¶ 1, ECF No. 1.  In their verified complaint, the plaintiffs requested a declaratory judgment, injunctive relief, nominal damages in the amount of $1 to each plaintiff, costs, attorney's fees pursuant to 42 U.S.C. § 1988, and other relief deemed just and proper by the court.  Verified Compl. Ad damnum cl.  On the same date, the plaintiffs also filed a Motion for Preliminary Injunction.  ECF No. 5.  The parties fully briefed

the issue of preliminary injunctive relief.  <u>See</u> ECF Nos. 6, 7, 14, 15.

On March 17, 2020, the court denied, without prejudice, the motion for preliminary injunction and set a schedule for the parties to file a joint stipulation of facts, cross-motions for summary judgment, and responses thereto.  ECF No. 21.  The parties filed a Joint Stipulations of Fact on March 26, 2020.  ECF No. 23.  Cross-motions for summary judgment were filed on April 27, 2020.  The parties filed their respective responses to the motions for summary judgment on May 15, 2020.  ECF Nos. 30, 31.

On May 17, 2022, the court denied the defendant's motion for summary judgment and granted the plaintiffs' motion for summary judgment.  Mem. Op. 29-30.  The court declared that the City of Parkersburg's prayer practice violated the Establishment Clause; issued a permanent injunction against the City of Parkersburg; and awarded nominal damages to each plaintiff, together with interest, attorneys' fees, and costs.  <u>Id</u>.  The court entered judgment on the same date.  J. Order 1-2, ECF No. 41.

The plaintiffs now move the court for an award of attorneys' fees pursuant to 42 U.S.C. § 1988.  Pls.' Mot. For

Att'y's Fees.  The plaintiffs seek to recover an award of $68,515.00 in fees for four attorneys and one paralegal:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Marcus B. Schneider | $400 | 101.9 | $40,760.00[1] |
| Patrick C. Elliott | 400 | 51.6 | 20,640.00 |
| Kristina T. Whiteaker | 400 | 4.6 | 1,840.00 |
| Christopher A. Line | 250 | 16.7 | 4,175.00 |
| Paralegal | | | |
| April White | 125 | 8.8 | 1,100.00 |
| | | | Total: $68,515.00[2] |

Pls.' Br. In Support Of Mot. For Att'y's Fees 4.

---

[1] According to Mr. Schneider, it is his custom to bill 50% of his hourly rate for travel. Pls.' Mot. For Att'y's Fees, Declaration of Marcus B. Schneider Ex. A ("Schneider Decl."), ECF No. 43.  Mr. Schneider's time entries list 11.3 travel hours at $200 per hour and 90.6 hours at $400. Id. Ex. 1. Applying these rates (($400 x 90.6) + ($200 x 11.3)) produces a fee of $38,500, rather than the amount stated in the plaintiff's motion, ECF No. 42 ¶ 7, and memorandum in support ($400 x 101.9 = $40,760). Pls.' Br. In Support Of Mot. For Att'y's Fees 4.

[2] The plaintiffs request $67,515.00 in fees. Pls.' Mot. For Att'y's Fees 1; Pls.' Br. In Support Of Mot. For Att'y's Fees 4.  However, this figure is incorrect, insofar as the hourly rates requested and hours expended are equal to $68,515.00.

The defendant raises two primary objections to the requested fee: (1) an hourly rate of $400 for attorneys Schneider, Elliott, and Whiteaker is greater than the prevailing market rate in the Southern District of West Virginia; and (2) plaintiffs' counsel double billed for certain tasks.  Resp. To Pls.' Mot. For Att. Fees. 2-9.  The defendant asks the court to set a $250 rate for all attorneys and $100 for paralegal services.  Def.'s Resp. 3-4.

## II.  Analysis

### A. Determining Reasonable Attorneys' Fees

It is undisputed that the plaintiffs are prevailing parties entitled to an award of reasonable attorneys' fees under 42 U.S.C § 1988.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988) (quoting 42 U.S.C. § 1988).  Having determined that the plaintiffs are prevailing parties, the court's calculation of a reasonable fee award proceeds in three steps.  McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) (citing Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243) (4th Cir. 2009)).  First, the court multiplies a reasonable hourly rate by hours reasonably expended to produce a lodestar figure.  Id.  In determining the reasonableness of an attorney's hourly rates and hours expended, the court's

7

discretion is guided by the <u>Johnson/Barber</u> factors. <u>Barber v.</u>
<u>Kimbrell's Inc.</u>, 577 F.2d 216, 226 (4th Cir. 1978) (adopting
twelve-factor test set forth in <u>Johnson v. Georgia Highway</u>
<u>Express, Inc.</u>, 488 F.2d 714 717-719 (5th Cir. 1974), <u>overruled</u>
<u>on other grounds</u>, <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989)).
These factors are:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> out-set of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases.

<u>Robinson</u>, 560 F.3d at 243-44 (citing <u>Barber</u>, 577 F.2d at 226
n.28). In determining the hourly rate, "four factors are

particularly relevant: the customary fee for like work; the experience, reputation and ability of the attorneys; attorneys' fees awards in similar cases; and the amount in controversy and the results obtained." Wolfe v. Green, No. 2:08-01023, 2010 WL 3809857, at *13 (S.D.W. Va. Sep. 24, 2010).

Next, the court subtracts fees incurred pursuing claims that were unsuccessful and unrelated to successful claims. McAfee, 738 F.3d at 88. Finally, the court adjusts the award by a percentage based on the degree of a plaintiff's success. Id.

The party seeking an award of fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437; see also Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) ("[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate.").

i. Reasonable Hourly Rates

"[R]easonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984). The relevant legal market "is ordinarily the

9

community in which the court where the action is prosecuted sits." Rum Creek Coal Sales v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994).

To carry its burden, a fee applicant must submit affidavits from its own attorneys and "specific evidence of the 'prevailing market rates in the relevant legal community' for the type of work for which he seeks an award." Plyler, 902 F.2d at 277 (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting Blum, 465 U.S. at 895). "The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." Spell, 824 F.2d at 1402.

In support of its motion, the plaintiffs submit declarations and affidavit from their attorneys. Pls.' Mot. For Att'y's Fees, Schneider Decl.; Declaration of Patrick C. Elliott Ex. B ("Elliott Decl."); Declaration of Christopher A. Line Ex. C ("Line Decl."); Affidavit of Kristina T. Whiteaker Ex. D ("Whiteaker Aff."), ECF No. 43.  The plaintiffs also provide declarations and affidavits from local practitioners.  Id.,

Declaration of Webster J. Arceneaux, III Ex. E ("Arceneaux Decl."); Declaration of Loree Stark Ex. F ("Stark Decl."); Affidavit of Samuel Brown Petsonk Ex. G ("Petsonk Aff."). Inasmuch as the foregoing evidence is particularly pertinent to the ninth and twelfth Johnson/Barber factors, the court turns to it now.

Mr. Schneider served as lead plaintiffs' counsel and is an equity partner at Steel Schneider LLC. Schneider Decl. ¶¶ 9, 15. He avers that he has been practicing law since 2008 and has served as plaintiff's counsel in multiple Establishment Clause cases. Id. at ¶¶ 4, 12. He requests a $400 hourly rate based upon his experience, the risk involved, awards in prior cases in this jurisdiction, and "speak[ing] with local practitioners regarding prevailing market rates for experienced civil rights attorneys." Id. at ¶¶ 37-40.

Mr. Elliott is Senior Counsel for the FFRF and served as an attorney of record. Elliott Decl. ¶ 3. He has practiced law since 2009 and has significant experience litigating First Amendment cases. Id. at ¶¶ 6, 8. Like Mr. Schneider, Mr. Elliott directs the court to attorneys' fees awarded in prior cases in this jurisdiction.

Mr. Line, also of the FFRF, is a staff attorney and served as an attorney of record. Line Decl. ¶ 3.  He has practiced law since 2017.  Id. at ¶ 6.

Ms. Whiteaker is an experienced attorney in Charleston, West Virginia and managing member of The Grubb Law Group, PLLC ("GLG").  Whiteaker Aff. ¶¶ 2, 7.  She has practiced civil rights law at GLG since 2004 and served as local counsel in this action.  Id. at ¶¶ 2, 13.  Ms. Whiteaker avers that she is "familiar with the hourly fees charged by other attorneys of my experience and qualifications for similar work," and believes that a $400 hourly rate is reasonable for herself, Mr. Elliot, Mr. Schneider, and Mr. Line (who, the court notes, requests only $250 per hour).  Id. at ¶¶ 19, 20.

The declarations and affidavits proffered by the plaintiffs amply speak to the experience, reputation, and ability of the attorneys, and the defendant does not dispute this evidence.  Rather, the defendant points out that the plaintiffs' attorneys have not testified about their customary rates.  Def's. Resp. 3.  Mr. Schneider and Ms. Whiteaker do not testify as to having been awarded hourly rates of $400 under Section 1988 in any prior cases, while Mr. Elliott has been awarded $300 per hour by a court outside the relevant local market.  Id.; Elliott Decl. ¶ 24.

12

The plaintiffs respond that three of their four attorneys are not based in the relevant market.  Evidence of the plaintiffs' customary rate in other markets would not greatly assist the court in determining what constitutes a reasonable rate in this case.  See Rum Creek Coal Sales 31 F.3d at 175 ("The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits.").  As local counsel, testimony from Ms. Whiteaker regarding her customary rate or prior awards under Section 1988 would have aided the court.

The customary fee for like work may be determined by other evidence, such as affidavits from local practitioners who are familiar with the prevailing rate in similar cases in the jurisdiction.  See Robinson, 560 F.3d at 245 ("Examples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.").

Here, plaintiffs have provided affidavits of several local practitioners.  Of these, only Mr. Arceneaux testifies to the reasonableness of the rates requested by all the attorneys.  Arceneaux Decl. ¶ 8.  The court finds Mr. Arceneaux's testimony

useful in determining the prevailing market rate.  Mr. Petsonk
testifies regarding only Ms. Whiteaker's rate, skills, and
experience.  Petsonk Aff. ¶¶ 4-5.  Although Mr. Petsonk
testifies to fees he has received in prior cases, he does not
testify that these cases are like the present action.

The plaintiffs have also directed the court to awards
in prior cases as evidence of the prevailing market rate.
Schneider Decl. ¶ 40; Elliott Decl. ¶ 23; Whiteaker Aff. ¶ 23;
Pls.' Br. 8-9.  Awards in prior cases may be evidence of the
prevailing rate in the relevant market.  See E. Associated Coal
Corp. v. Dir., Off. of Workers' Comp. Programs, 724 F.3d 561,
572 (4th Cir. 2013) ("prior fee awards constitute evidence of a
prevailing market rate that may be considered in fee-shifting
contexts.").  Awards in prior cases do not set the prevailing
market rate, but they may function as inferential evidence of
the prevailing rate in the relevant market.  Id.

The defendant directs the court to McGee v. Cole,
115 F.Supp.3d 765 (S.D.W. Va. 2015).  There, attorneys from
Jenner and Block requested rates contained in the Laffey Matrix,
which sets a rate schedule for litigators in the Washington D.C.
market.  Inasmuch as the Matrix had limited applicability in the
Southern District of West Virginia, the court declined to use
it, and set rates consistent with the prevailing market rate in

this district.  <u>McGee</u>, 115 F.Supp.3d at 775.  The defendant argues that plaintiffs' attorneys are similarly seeking an extra-jurisdictional hourly rate.  Def.'s Resp. 4.

The plaintiffs flatly deny they have requested extra-jurisdictional rates and rebuff any comparison between their more modest fee request and that of the most highly compensated attorneys in <u>McGee</u>.  The plaintiffs have the stronger argument on this point.  Unlike in <u>McGee</u>, where the plaintiffs' counsel sought an award consistent with the prevailing rate in Washington D.C., here, the plaintiffs expressly seek rates in line with those for attorney services in this district.  Schneider Decl. ¶ 40 (collecting decisions in the Southern District of West Virginia); Elliott Decl. ¶ 23 (same); Pls.' Br. 8-9.  The plaintiffs highlight the $400 hourly rate set by the <u>McGee</u> court for an "experienced and seasoned litigator managing subordinate staff."  115 F.Supp.3d at 775.  The plaintiffs also point to a handful of decisions in this court where experienced attorneys were awarded between $300 and $500.  Schneider Decl. ¶ 40; Elliott Decl. ¶ 23; Whiteaker Aff. ¶¶ 21-22 Petsonk Aff. ¶ 3.

Having reviewed awards in prior cases and the affidavits of plaintiffs' counsel and other local practitioners, the court concludes that a fee approaching $400 per hour is within the

range of reasonableness in this jurisdiction for plaintiffs'
lead counsel, Marcus Schneider, when compared to that of
similarly skilled attorneys in similar circumstances with
similar results, with plaintiffs' remaining counsel being
considered at a lesser level of compensation.  See Johnson v.
Ford Motor Company, No. 3:13-cv-06529, 2018 WL 1440833, at *5-6
(S.D.W. Va. Mar. 22, 2018) (Eifert, M.J.) (collecting cases and
concluding that the prevailing market rate for attorney services
in the Southern District of West Virginia ranges from $150-550
per hour).

        Of the cases cited by each of the parties, McGee is
the most like this action.  115 F.Supp.2d 765.  Like the present
case, the plaintiffs in McGee alleged a constitutional violation
and prevailed at summary judgment after few hearings and no
discovery.  The court in McGee determined that $400 per hour was
reasonable for an "experienced and seasoned litigator managing
subordinate staff."  Id.  Further, the attorneys awarded the
highest rates in McGee played leading roles in the litigation.
Id.  Experienced attorneys for Lambda Legal were awarded rates
between $275 and $325 based on their experience, expertise, and
substantial responsibilities in the case.  Id.  The Tinney Law
Firm, which appears to have had fewer substantial
responsibilities, was awarded rates between $205 and $300.  Id.

Although there was relatively little management of subordinates in this case, Mr. Schneider is an experienced litigator, as are Mr. Elliott and Ms. Whiteaker, with more than 10 years of experience and specialized knowledge.

Having considered the fifth, ninth, and twelfth factors, the court considers the remaining factors.  The second and third factors — the novelty and difficulty of the questions raised, and the skill required, respectively — do not justify an increase from the requested hourly rate, but neither do they point towards reducing plaintiffs' counsels' rates.  Although the legal issue raised was not novel, the factual intricacies of Establishment Clause litigation are not without difficulty.  The plaintiffs demonstrated skill in successfully marshalling enough facts without discovery to prevail at summary judgment.  Most importantly, the court notes that the plaintiffs have attained commendable success on the merits.  See Doe v. Chao, 435 F.3d 492, 505 (4th Cir. 2006) ("[W]hen a district court determines what fee is reasonable, the most critical factor in that determination is the degree of success obtained.") (citing Hensley, 461 U.S. at 436) (internal quotation marks omitted). There is no testimony relating to the fourth, seventh, tenth or eleventh Johnson/Barber factors that justifies setting a different rate.

In consideration of the foregoing, the court concludes that $375 is a reasonable hourly rate for Mr. Schneider and $300 for Mr. Elliott.  The court determines that $275 per hour is reasonable for Ms. Whiteaker.  Ms. Whiteaker is also an experienced practitioner; however, inasmuch as she did not play a prominent role in the litigation, a reduced fee is warranted by the record.  So it is that the court declines to adopt the defendant's request of an across-the-board rate of $250.  An hourly rate of $250 would anomalously set the rate for three more experienced attorneys equal to the least experienced attorney whose rate, the court notes, the defendant did not challenge.

As his rate was unchallenged, Mr. Line is awarded his requested hourly rate of $250. The court awards an hourly paralegal rate of $115 for Ms. White.  Although the defendant argues that the court in McGee determined that a $100 hourly rate was reasonable for paralegals, 115 F. Supp. 3d at 775, that decision was several years old when this litigation started and is seven years old now.  The court finds that $115 is a reasonable rate in this case for the services provided.

### ii.   Hours Reasonably Expended

A petitioner must also document "the appropriate hours expended." Hensley, 461 U.S. at 437.  A fee petitioner

should exercise "billing judgment," taking care to eliminate from their request "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id.; see also Rum Creek Coal Sales, 31 F.3d at 175 ("At bottom, the number of hours must be reasonable and must represent the product of billing judgment.") (quoting Hensley, 461 U.S. at 437) (internal quotation marks omitted).

The defendant contends that the plaintiffs' fee should be reduced due to double billing. Def.'s Resp. 6-9. Specifically, the defendant argues that the plaintiffs overbilled for correspondence between attorneys and that Ms. White billed for reviewing the docket when attorneys would have done the same activity, leading, in some cases, to billing "up to four times" for the same task. Id. at 7-8. The defendant also argues that there are other "clear" instances of overbilling by attorneys Elliott and Line with respect to their work on the verified complaint and preliminary injunction and later by Mr. Schneider and Mr. Elliott for the plaintiffs' motion for summary judgment. According to the defendant, having multiple timekeepers working on the same document reflects lawyering-by-committee rather than a sensible division of labor. The defendant

compares this case to McGee where the court reduced the number of hours billed by one-third in litigation that consisted of only a few hearings, no discovery, and only one round of substantial briefing at summary judgment. 115 F. Supp. 3d at 776.

The plaintiffs respond that rather than duplicating work, the attorneys divided their labor, and billed a relatively modest amount of time: 10 hours on the Verified Complaint, approximately 30 hours on the motion for preliminary injunction, and approximately 20 hours reviewing and replying to the defendant.  Pls.' Rep. Br. 7-8. Throughout, Ms. Whiteaker, as local counsel, and Ms. White as the paralegal monitored the case in support of the other attorneys who took the lead on substantive matters.

The plaintiffs claim only 183.6 attorney hours and 8.8 paralegal hours.  This amount of time is far more reasonable than in McGee where "[a]n impressive battalion of lawyers, eleven attorneys from three firms" billed more than 1,000 hours.  115 F. Supp. 3d at 774.  The record indicates that the plaintiffs' attorneys collaborated with each other, but not to an excessive or unnecessary degree.  The defendant's contention that the plaintiffs double-billed or

even quadruple-billed tasks is not borne out by a review of the evidence.

     The defendant next raises two overlapping objections: block billing and vague task descriptions.  Def's Resp. 8-9.  Although the defendant has not directed the court to any specific instances of block billing, the court's review of the evidence reveals the existence of time entries that may fairly be termed block billing.  Many of Mr. Elliott's entries contain multiple tasks.  The entries for July 31, 2018 ("Research and Revisions to Motion for Preliminary Injunction" for 0.6 hours) and May 7, 2020 ("Review and research City Summary Judgment response brief, write analysis" for 0.8 hours) are two examples.  Elliott Decl. Ex. 1.  Mr. Schneider has similarly grouped tasks together. For example, he billed 3.6 hours on July 31, 2018 for:

> "Review Memo edits from FFRF. Discuss memo w/ JDS, review proposed edits, make final changes to content of memo. Edit, update exhibit cover sheets, certificates of service. Prepare all documents for filing. File."

Schneider Decl. Ex. 1.  The court is mindful of the Supreme Court's admonition that "trial courts need not, and indeed should not, become green-eyeshade accountants," and should be mindful that the goal of shifting fees is to achieve "rough

justice, not auditing perfection." <u>Fox v. Vice</u>, 563 U.S. 826, 828 (2011).  In view of the degree of success achieved, the court concludes that limited block billing in this case does not warrant reduction.

Moreover, notwithstanding the plaintiffs' block billing, the billing descriptions are adequate.  The court will not demand greater detail than is necessary to understand what was done, by whom, when, and for how long.  <u>See</u> <u>Corral v. Montgomery Cnty.</u>, 91 F. Supp. 3d 702, 716 (D. Md. 2015) ("A greater demand for detail would unreasonably burden private attorneys who already live in a system that requires them to account for each six-minute increment of their working time.").

The plaintiffs have otherwise exercised billing judgment.  Mr. Elliott excluded 3.5 hours spent prior to initiating this action.  Elliott Decl. ¶ 20.  Mr. Schneider did not seek compensation for the time he spent preparing his declaration in support of this motion, and he customarily applies a reduced rate for time spent traveling.  Schneider Decl. ¶¶ 24-25.  In accordance with Mr. Schneider's custom, the court will apply 50% to the $375 rate previously determined to be reasonable, <u>supra</u> section II.A.i, for the 11.3 hours of travel claimed by Mr. Schneider.

22

The foregoing analysis encompasses the first, second, third, fifth, eighth, ninth, and twelfth Johnson/Barber factors.  The remaining factors do not alter the court's determination of the number of hours reasonably expended.

### iii.  Lodestar Figure

Having determined reasonable rates and hours reasonably expended, the court proceeds to calculate the lodestar figure:

| Attorney | Hourly Rate | Hours | Total |
|----------|-------------|-------|-------|
| Marcus B. Schneider | $375 | 90.6 | $33,975.00 |
|  | 188 | 11.3 | 2,124.40 |
| Patrick C. Elliott | 300 | 51.6 | 15,480.00 |
| Kristina T. Whiteaker | 275 | 4.6 | 1,265.00 |
| Christopher A. Line | 250 | 16.7 | 4,175.00 |
| Paralegal |  |  |  |
| April White | 115 | 8.8 | 1,012.00 |
|  |  |  | Total: $58,031.40 |

Inasmuch as plaintiffs were successful on all their claims, there are no fees to subtract from the lodestar amount.  The court therefore awards plaintiffs $58,031.40 in attorneys' fees.

### III.   Costs

The court awards the plaintiffs $971.28 in undisputed costs.

### IV.   Conclusion

For the foregoing reasons, it is ORDERED that the plaintiffs' motion for attorneys' fees be, and hereby is, granted in part and denied in part, and that the plaintiffs are awarded $58,031.40 in attorneys' fees and $971.28 in costs.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: October 6, 2022

John T. Copenhaver, Jr.
Senior United States District Judge